CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 5 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ANNE T. FITZGERALD, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 5:17-cv-16 |
| ) | |
| v. ) | |
| ) | |
| JAMES B. ALCORN, et al., ) | |
| ) | By:   Michael F. Urbanski |
| Defendants. ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendants' motion to exclude the testimony of Jeffrey A. Jenkins, PhD, as a proposed expert witness for the plaintiffs. ECF No. 37. The court heard argument on the motion at an October 26, 2017 hearing. The defendants are the Virginia Department of Elections and members of the Virginia Board of Elections.[1] The plaintiffs are three individuals and two voluntary associations affiliated with the Republican Party of Virginia (the "Party"). The lawsuit challenges the constitutionality of the Incumbent Protection Act (the "Act"), Va. Code. Ann. § 24.2-509(B). The Act provides certain elected officials with the power to choose the method of nomination used to select their political party's nominee for their office. Cross motions for summary judgment are pending and will be considered in a forthcoming Memorandum Opinion. But for now, the court addresses defendants' request to exclude Jenkins as an expert witness. The court will deny the motion for the reasons below.

---

[1] Under Virginia law, the Department of Elections administers the regulations promulgated by the Board of Elections. See Va. Code Ann. §§ 24.2-103, 24.2-404.

# I.

Jenkins is a Provost Professor of Public Policy, Political Science, and Law at the University of Southern California. Prior to joining USC, Jenkins taught at the University of Virginia for ten years. He also held academic positions at Northwestern University and Michigan State University and postdoctoral fellowships at Princeton University and Michigan State University. Jenkins' work focuses on legislative politics and political parties and includes more than 40 articles in peer-reviewed journals. He has not served as an expert witness in litigation during the prior four years.

In support of their summary judgment motion, plaintiffs filed a signed declaration summarizing Jenkins' proposed trial testimony, ECF No. 39-27, and Jenkins' deposition taken by defense counsel, ECF No. 39-30. Plaintiff's expert disclosure indicated that Jenkins would testify about "the nomination process under Virginia Law and the Plan of Organization of the Republican Party of Virginia, the structural advantages enjoyed by incumbent office holders [sic] in such process, and the additional advantages conferred to incumbent officeholder [sic] by Section 24.2-509(B) … as well as related matters, all as set forth in the Expert Report previously provided." ECF No. 38-1, at 1–2.[2]

In forming his opinions related to this case, Jenkins relied heavily on rational choice institutionalism, a theory that posits that political outcomes are the product of preferences and institutions. ECF No. 39-27, at 3–4. Pursuant to this theory, Jenkins opines in his declaration that Virginia incumbents "have the ability to assess how they would perform

---

[2] Jenkins' expert report was filed by defendants at ECF No. 38-2, at 42–53. In addition, all page numbers noted in this Memorandum Opinion that are associated with ECF documents reflect the page number listed in the ECF-created footer, not the page number listed on the original documents.

under the different nomination methods and choose the one that they believe maximizes their chances of reelection." Id. at 9. He states that "the mere existence of the Act ... disadvantages challengers and benefits incumbents." Id. In addition, Jenkins believes that one way to strengthen the role of political parties would be to implement party registration for primary voters, which would allow "parties to restrict primary participation to their members exclusively." Id. at 10. Jenkins expanded on these opinions in his deposition. Plaintiffs contend that Jenkins' testimony is relevant to both of the issues at the center of this case: whether plaintiffs have standing to sue and whether the Act violates their First Amendment rights. Defendants argue that Jenkins' testimony fails to satisfy the evidentiary standards related to expert witnesses.

## II.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[3] The Rule's prescriptions are guided by the Supreme Court's decisions in <u>Daubert v. Merrell Dow Pharms. Inc.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999). In <u>Daubert</u>, the Court explained that the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

---

[3] Rule 702 states:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

3

Under Rule 702, "expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" to the trier of fact. Id. at 591.[4] In Kumho Tire, the Court made clear that these principles apply to all proposed expert witnesses, including those with specialized knowledge such as Jenkins. See Kumho Tire, 526 U.S. at 141. "The question of whether a witness is qualified to testify is context-driven and can only be determined by the nature of the opinion he offers." RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc., 609 F. App'x 731, 738 (4th Cir. 2015).

Defendants argue that Jenkins ought to be excluded as an expert because his testimony is irrelevant and would not be helpful to the trier of fact in resolving the case. They make two arguments: (1) Jenkins lacks the requisite familiarity with the Virginia electoral procedures at issue in this case; and (2) Jenkins' definition of a "closed primary" contradicts the definition employed by federal courts in controlling cases.

In support of their first argument, defendants argue that Jenkins' academic background on national politics is inapplicable to this case, and Jenkins did not review sufficient Virginia-specific materials in forming his opinions. Defendants focus on Jenkins' statement that "[m]ost of my scholarly work is on national parties, U.S. Congress, American political development. **Much less so on state parties**." ECF No. 38-2, at 9:15–17 (emphasis added). They argue that "Jenkins attempts to parlay his research and familiarity as an expert on national politics into an expert opinion on Virginia election procedures and state party dynamics." ECF No. 38, at 7. Plaintiffs counter that Jenkins' expertise in rational choice institutionalism allows Jenkins to opine as to how those general principles apply to

---

[4] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

4

the facts of this case. According to plaintiffs, "courts do not require narrower and narrower sub-specialization ... in order to admit expert testimony into evidence." ECF No. 41, at 5 (discussing Palatka v. Savage Arms, Inc., 535 F. App'x 448, 454 (6th Cir. 2013), wherein the court allowed expert testimony of a mechanical engineer in a products liability case about firearms, even though the engineer lacked specific knowledge of firearms).

Defendants also argue that Jenkins did not sufficiently prepare in order to form his opinions on the subject matter of this case, which further reveals his lack of familiarity with Virginia's electoral system. In preparing for his testimony, Jenkins reviewed various sections of Virginia's election laws (including the Act), forms promulgated by the Department of Elections used to enforce those laws, memoranda filed by plaintiffs in the case, the Party's Plan of Organization (the "Plan"), and other Party documents related to the selection of nomination methods. He also reviewed the academic literature related to the Act, albeit scarce, and other peer-reviewed literature on principles of incumbency advantage and political parties. See ECF No. 39-27, at 4, 12–13.

According to defendants, those materials do not provide enough background on which Jenkins could have reliably formed his opinions. They contend that Jenkins should have reviewed meeting minutes of plaintiffs 20th House of Delegates District Republican Committee and 6th Congressional District Republican Committee. Further, Jenkins ought to have known that in presidential primaries, Virginia law allows political parties to require "the signing of a pledge by the voter of his intention to support the party's candidate." Va. Code

Ann. § 24.2-545(A). Defendants also cite Jenkins' lack of knowledge that the Party voted to exercise such a pledge requirement in the 2016 presidential primaries.[5]

The court has reviewed Jenkins' proposed testimony, his qualifications, and preparation and concludes that he his qualified under Rule 702. As defendants recognize, Jenkins has "significant experience with national political science." ECF No. 38, at 8. Indeed, his proposed testimony applies general principles of rational choice institutionalism to the electoral procedures at issue in this case. Jenkins' testimony shows his familiarity with the Act and the Plan, the sources at the center of the controversy. Although Jenkins did not consider every bit of evidence that defendants consider important, "one need not be precisely informed about all details of the issues raised or even have prior experience with the particular subject the testimony concerns." RG Steel, 609 F. App'x at 739; see also Bresler v. Wilmington Tr. Co., 855 F.3d 178, 195 (4th Cir. 2017) ("[Q]uestions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility."). The meeting minutes and other materials that Jenkins did not consider, while relevant, are not critical to Jenkins' testimony that the powers granted by the Act affect political outcomes. Consequently, the court finds that Jenkins possesses the requisite background as a political scientist and adequately reviewed case-specific materials to offer his proposed expert testimony.

---

[5] Although not in the record, the court notes that the Party ultimately rescinded the pledge requirement before the 2016 primary Election Day. See Bill Bartel, Virginia GOP asks state to cancel "loyalty oath", The Virginia Pilot, Jan. 30, 2016, available at https://pilotonline.com/news/government/politics/virginia/virginia-voters-in-gop-primary-must-sign-statement-saying-they/article_4bea8ea7-1e97-56a8-b48f-db62c80300f0.html. During the deposition, defense counsel did not inform Jenkins about the Party's cancellation of the pledge requirement.

Defendant's second argument challenging Jenkins' qualification is likewise unavailing. They argue that Jenkins' employs a definition of a "closed primary" that is more restrictive than the definition relied on in Supreme Court cases, and therefore, this portion of Jenkins' testimony is not relevant. The Supreme Court has characterized a closed primary as one "in which only persons who are members of the political party—i.e., who have declared affiliation with that party when they register to vote—can vote on its nominee." California Democratic Party v. Jones, 530 U.S. 567, 570 (2000) (describing Cal. Elec. Code Ann. §§ 2150, 2151); see also Clingman v. Beaver, 544 U.S. 581, 587 (2005) ("In Tashjian, this Court struck down, as inconsistent with the First Amendment, a closed primary system that prevented a political party from inviting Independent voters to vote in the party's primary.")

In contrast, Jenkins believes that for a primary to be "closed," the electoral procedures must place a relatively high barrier to entry. According to Jenkins, a primary is not closed if, in order to participate, voters need only declare affiliation to the party. Rather, Jenkins believes that the rules must impose a "future cost"—such as preventing a voter from switching to another party in the next election—in order for the primary to be characterized as closed. ECF No. 38-2, at 25:5-25.[6] Jenkins' view of what constitutes a closed primary is

---

[6] The Supreme Court has invalidated a state law that prevented voters from switching parties for nearly two years after voting in a party's closed primary. See Kusper v. Pontikes, 414 U.S. 51, 58 (1973). Defendants argue that Jenkins' "future cost" requirement would be invalid under Kusper. However, Jenkins is not clear as to what form a "future cost" would entail. See ECF No. 38-2, 25:20-25 ("[I]f I voted today as a Republican, I could not – there has to be some prevention for me to essentially move to the Democratic column in the next election. I can't just jump parties whenever I'd like. I mean, that's essentially an open primary."). Not all future costs in primary voting are constitutionality objectionable. In Rosario v. Rockefeller, 410 U.S. 752 (1973), the court upheld a state law that required voters to register with the party of their choice at least 30 days before the previous general election in order to vote in the next party primary. See Rosario v. Rockefeller, 410 U.S. 752 (1973). It is equally plausible that Jenkins' "future cost" requirement could take the form of the invalid lock-out procedure at issue in Kusper, or the valid delayed-enrollment procedure at issue

7

therefore more restrictive than the descriptions used by federal courts. Defendants contend that such a disagreement requires the court to exclude Jenkins' testimony as irrelevant. The court, however, disagrees.

Defendants cite no authority for the proposition they seek to establish, that is, that expert testimony is irrelevant if the witness disagrees with federal courts' definition of a term that describes an electoral procedure. Perhaps defendants believe that the Supreme Court's description of a closed primary in Jones, 530 U.S. at 570, and Clingman, 544 U.S. at 587, indicates that the term has a controlling legal definition. "[C]ourts often exclude expert opinions that involve legal conclusions if those opinions tell the jury nothing about the facts." Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6265.2 (2d ed.); see also United States v. McIver, 470 F.3d 550, 562–n.13 (4th Cir. 2006) (opinion testimony that "draws a legal conclusion by applying law to the facts is generally inadmissible ... [unless it] is helpful to the jury"). But here, even assuming that the definition of a "closed primary" amounts to a legal conclusion, Jenkins' testimony would be admissible because it would help the trier of fact in resolving this case. Specifically, the testimony regarding closed primaries illuminates the effect of voter eligibility requirements on political parties' ability to freely associate with their preferred group of primary voters. This information would help a fact finder on the issues of standing and the plaintiffs' First Amendment claims. And most importantly, Jenkins' view of what counts as a closed primary is ancillary to his core opinion that the Act disadvantages challengers and benefits incumbents. Any disagreement over the definition of

---

in Rosario. Defendants therefore miss the mark; Jenkins' view of what constitutes a closed primary is not necessarily foreclosed by Kusper. Further, and as explained below, even if Jenkins' definition of a closed primary amounts to a legal conclusion in conflict with Kusper, his proposed expert testimony is admissible so long as it is helpful to the finder of fact.

8

terms, as used in Jenkins' academic ventures and legal precedent, goes to the weight of Jenkins' testimony, not its admissibility. Jenkins' testimony about closed primaries will not be excluded.

The conclusion to admit Jenkins' testimony is bolstered by the fact that this case demands a bench trial. The Daubert standards apply less stringently when the proposed expert testimony will not be considered by a jury. See United States v. Wood, 741 F.3d 417, 425 (4th Cir. 2013) ("Finally, because the district court was also the trier of facts, the district court's evidentiary gatekeeping function was relaxed."); United States v. Brown, 415 F.3d 1257, 1269 (11th Cir. 2005) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."). In this case, the court, sitting as the trier of fact, will be free to "accept or reject the experts' testimony at trial without inappropriately usurping its gatekeeping function." Larosa v. Pecora, No. CIV.A. 1:07CV78, 2009 WL 3460101, at *3 (N.D.W. Va. Mar. 2, 2009).[7] While the lower Daubert standard is not determinative here, it strengthens the court's conclusion that Jenkins' testimony is admissible under Rule 702.

---

[7] The parties anticipate that the court will resolve this case on the pending cross motions for summary judgment. Nevertheless, the same rationale for applying Daubert less stringently in a bench trial applies to the consideration of the proposed expert testimony on summary judgment. The court has "great flexibility with regard to the evidence that may be used on a summary judgment proceeding." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 538 (4th Cir. 2015). This discretion allows the court to consider an expert's sworn declaration and deposition testimony when passing on summary judgment motions. See Humphreys, 790 F.3d at 538–39 (affirming district court decision to consider sworn expert report on Rule 56 motion because "the content of the reports would be admissible through the expert's testimony at trial"). So in any event, the court will decide the extent to which it will rely on Jenkins' testimony in resolving this case, whether at a bench trial or on summary judgment.

9

## III.

For the reasons above, the court will deny defendant's motion to exclude the testimony of Jeffrey A. Jenkins, PhD, as a proposed expert witness for the plaintiffs. ECF No. 37. An appropriate Order will be entered.

Entered: 01-05-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge